IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

FILED
IN OPEN COURT

SEP 2 4 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA

v.

JEFFREY RADTKE,

      Defendant.

Case No. 2:24cr88

## STATEMENT OF FACTS

The United States and the defendant, JEFFREY RADTKE (hereinafter, RADTKE or "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.      Beginning on an unknown date but no later than June 2021, and continuing through on or about April 24, 2023, in the Eastern District of Virginia and elsewhere, defendant JEFFREY RADTKE, together with others known and unknown, did unlawfully and knowingly combine, confederate, conspire, and agree to commit the following offenses against the United States:

    a.  Creation of Animal Crush Videos: knowingly created at least one animal crush video, as that term is defined in Title 18, United States Code, Section 48(f)(2), and intended and had reason to know that the animal crush video would be distributed in and using a means and facility of interstate and foreign commerce, and the animal crush video was distributed in and using a means and facility of interstate and foreign commerce.

    b.  Distribution of Animal Crush Videos: knowingly sold, marketed, advertised, exchanged, and distributed an animal crush video in and using a means and facility of interstate and foreign commerce.

## THE OBJECT OF THE CONSPIRACY

2.      The object of the conspiracy was for the conspirators to promote, create, obtain, and distribute animal crush videos using videographers and animals in other countries, to include Indonesia, which would then be sent to the United States.

## THE WAYS, MANNER, AND MEANS OF CONSPIRACY

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

3.      It was part of this conspiracy for defendant JEFFREY RADTKE and coconspirators to administer a private online chat group and be a member of other private online chat groups ("Groups") on an encrypted messaging platform, the purpose of which was to fund, view, distribute, and promote animal crush videos depicting, among other things, the torture, murder, and sexually sadistic mutilation of animals, specifically, juvenile and adult monkeys.

4.      It was part of this conspiracy for defendant JEFFREY RADTKE and coconspirators to collectively fund the creation of animal crush videos using online payment applications.

5.      It was part of this conspiracy for coconspirators outside of the United States to receive this funding and use it to procure recording devices and animals for the creation of animal crush videos.

6.      It was part of this conspiracy for coconspirators outside of the United States, including adult and juvenile individuals, to torture, perform sexually sadistic mutilation, and murder these animals and to video record such acts, thereby creating animal crush videos.

7.      It was part of this conspiracy for coconspirators outside of the United States to transmit animal crush videos to coconspirators within the United States, some of whom were

members of the Groups, who would then distribute them to the broader Groups, to include defendant JEFFREY RADTKE.

OVERT ACTS

In furtherance of this conspiracy, and to effect and accomplish its objectives, defendant JEFFREY RADTKE and other coconspirators committed one or more of the following overt acts:

1.      Beginning on an unknown date but no later than June 11, 2021, and continuing through on or about July 8, 2022, defendant JEFFREY RADTKE received over 20 electronic payments ranging from $1 to $300 from Coconspirator 1 (CC1) and other coconspirators for the purposes of funding, among other things, payments to animal crush videographers that lived outside of the United States, including Indonesia, to create new animal crush videos.

2.      RADTKE, CC1, and others had direct communications with Coconspirator 11 (CC11) in Indonesia.   CC11 lived in Indonesia and hired the videographers to create new animal crush videos to send to the coconspirators.   RADTKE, CC1, and others routinely directed and paid CC11 for the creation of animal crush videos from the funds they received from coconspirators.   RADTKE, CC1 and others would direct the videographers how to torture the animals in the videos.

3.      Specifically, between on or about June 7, 2021, and August 5, 2022, defendant JEFFREY RADTKE sent over 40 payments ranging from $25 to $295 to CC11 for the purposes of funding payments to the animal crush videographers that lived in Indonesia to create new animal crush videos and send the videos to him and others.

4.      As an example of how the conspiracy worked, on or about April 25, 2022, a member of the Groups submitted a message to the Groups referencing "the *ants in a jar idea*." Members of the Groups discussed sending in donations to produce videos that would be exclusive

to the Groups.   Approximately seventeen minutes later, CC3 wrote "*$20 sent*" and CC3 did, in fact, send $20 to CC1 using an online application.

5.      On or about June 21, 2022, CC1 distributed an animal crush video to the Groups, stating "Enjoy this one ladies and gents."   CC1 also asked "If you guys would like to send in a small donation for this guy a little bonus for a job well done that we've always wanted to see would be absolutely amazing."   The video CC1 distributed depicted the torture of a juvenile monkey using a jar of ants and sodomy with an object, causing the juvenile monkey's death.

6.      Following the distribution of the video on June 21, 2022, members of the Groups expressed gratitude for the video and its specific contents, including the fact the jar of ants was used.   Thereafter, CC3 wrote "*I love how he had doubts but was able to make the ants request work on short notice.*"   CC3 thereafter sent a bonus payment for the videographer using an online application, and stated "*I happily threw some bonus bucks at the kid.   We need to keep him happy and well fed.*"

7.      Coconspirator 12 (CC12) encouraged more donations to CC1 by stating:

> Our group is allowed to give CC1 donations for her videos per the agreement her and I have between our two groups. She has my permission to put up her cashapp and PayPal info. She delivers great content to us. So feel free to donate to her. All I ask, is whoever does private message me with the amount you donated so I can keep track for our group. Thank you family.

8.      CC12 lived in the Eastern District of Virginia during the conspiracy and participated in the conspiracy during its duration therefrom.

9.      In April 24, 2023, law enforcement seized RADTKE's electronic devices. RADTKE's computer contained over 2600 videos and 2700 images depicting animal crushing. including the above-described video depicting the torture of the juvenile monkey using a jar of ants.

10.     Another such video on the defendant's computer was entitled "strappado".   The video was 8:32 in length.   At the beginning of the video, there was an explanation of what "strappado" torture meant.   The video depicted a monkey being hung by its arms behind its back. The monkey's legs were tied together to a large rock pulling it down. While hanging, the abuser pulled the monkey's teeth out with a pair of pliers and beat the monkey with a stick. Once the monkey was cut down, the abuser cut the monkey's throat with a knife and cut off its tail.

11.     Upon questioning by law enforcement, RADTKE admitted to commissioning and paying for the creation of the "strappado" video and re-naming the video after receiving it. RADTKE also admitted to adding the description of strappado with video-editing software.

12.     The distribution and creation of the videos necessarily utilized applications and electronic media that used the Internet.   The Internet is an interconnected network of computers with which one communicates when on-line, is a network that crosses state and national borders, and is a facility of interstate and foreign commerce.

13.     The defendant knew that the videos described herein and other images involved in this conduct were obscene.

14.     The defendant's participation in the events described was undertaken knowingly, intentionally, and unlawfully, and not as a result of an accident, mistake, or other innocent reason.

15.     The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case, nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:   9/24/24 ~~Click to enter a date.~~

By:   _____
Elizabeth M. Yusi
Assistant United States Attorney

*U.S. v. JEFFREY RADTKE*, 2:24cr88

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JEFFREY RADTKE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JEFFREY RADTKE

I am JEFFREY RADTKE's attorney.  I have carefully reviewed the above Statement of Facts with him.  To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Christa Groshek, Esq.
Counsel for Defendant

_____
Trey Kelleter, Esq.
Counsel for Defendant