**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CRIMINAL NO. 2:24-cr-88** |
| ) | |
| **JEFFREY RADTKE,** ) | |
| ) | |
| **Defendant.** ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by Erik S. Siebert, United States Attorney, and Elizabeth M. Yusi, Assistant United States Attorney, offers this position paper under both the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and 18 U.S.C. § 3553(a) for defendant.

After further review of the evidence, the government agrees with defendant JEFFREY RADTKE ("the defendant" or "RADTKE") that he should not be assessed an enhancement as a leader in the conspiracy and should not be attributed with a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a). Without the four-level enhancement, the defendant appears to be eligible for the zero-point offender two-level reduction. U.S.S.G. § 4C1.1. This results in a level 16, or a Guidelines advisory range of 21-27 months. However, as explained further below and based on the defendant's reprehensible actions, the government maintains that an upward variance is appropriate under the 18 U.S.C. § 3553(a) factors. As such, the government maintains that a sentence of 36 months' imprisonment is appropriate. The government will present evidence at sentencing to support this request through the testimony of the case agent.

Based on defendant's participation in the conspiracy, his history and characteristics, and the horrific nature of the offense, the United States asks the Court to impose a 36-month sentence of imprisonment and three years of supervised release.

## I.  BACKGROUND

On September 24, 2024, RADTKE waived indictment and pleaded guilty to one count of conspiracy to create and distribute animal crushing videos.   His sentencing is set for February 13, 2025, before this Court.   RADTKE remains on bond.

## II.  STANDARDS GOVERNING SENTENCING

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the Guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'"   *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).   The district court must then consider all the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49).   In doing so, the district court may not presume that a sentence within the Guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351-52 (2009).   Rather, the Court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

If the district court imposes a sentence outside the Guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50).   After deciding an appropriate sentence, the Court "must adequately explain the chosen sentence to allow for

2

meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

### III.   18 U.S.C. § 3553(a) FACTORS

A sentence of 36 months is reasonable and appropriate in the instant case. As discussed below, the application of the 3553(a) factors - in particular the nature and circumstances of the offenses and the defendant's direct support of the crime - support the government's requested sentence in this case.

A. Nature and Circumstances of the Offense

Defendant RADTKE was identified in 2023 by Homeland Security Investigations (HSI) as a result of an extensive investigation into online groups dedicated to the creation and distribution of videos depicting the heinous, obscene torture of juvenile macaque monkeys in Indonesia. In the videos shared among these groups, the monkeys are often crying in distress and pain while being tortured in various ways before they finally die.

These groups primarily used Telegram, which is an instant messaging service and provides end-to-end encrypted. Traditional methods of identification do not work with Telegram and other encrypted platforms, but HSI was able to identify RADTKE and a number of other conspirators located around the country and world who were part of RADTKE's online groups, among others' groups.

What HSI discovered was horrifying: groups of people who loved to come up with new and creative ways to torture juvenile monkeys to death. RADTKE, aka "Simian Sam," and his conspirators would "fund" these videos by sending money to RADTKE and other leaders. In at least 2022, RADTKE himself was one of the direct links to the videographers in Indonesia who would take payment for the "new and creative" torture directions: he would direct the videographer to perform the torture on the monkeys, have the videographer video the torture, and have the videographer send the videos back to RADTKE and others to distribute on Telegram. There were literally hundreds, if not thousands, of these torture videos that the groups would comment on, where they would laugh at the torture of the "rats," be disappointed there was not more visceral reactions from the stunned monkeys, and glorify the torture of these poor animals.

In April 2023, HSI executed a search warrant at RADTKE's residence in Minnesota. At first, RADTKE lied about his involvement with the criminal activity. Eventually, RADTKE took responsibility and admitted to being part of the groups. He admitted to "ordering" the videos and even editing them with his own software prior to distributing them. HSI seized the defendant's electronics and found over 2600 videos and 2700 images depicting the torture and death of the young monkeys, including videos of the sodomizing of the monkeys, crushing of the monkeys' genitals, and other horrendous actions.

B.  History and Characteristics of the Defendant

The history and characteristics of the defendant also supports a 36-month sentence. The defendant did admit responsibility and did not put the government or public through a trial. Considering the crime at issue, this was a blessing to anyone who could have potentially be on

the jury.   However, the defendant's acceptance of responsibility has to be weighed against his significant involvement in the crime.

While RADTKE has no criminal history, the Court must look beyond the defendant's official criminal history to his personal characteristics as well, which include his involvement in the crime.   Many videos would not have been created (and the monkeys tortured) had the defendant not collected the money and then "ordered" them from the videographers.   He would then disseminate the videos to the group.   He also enjoyed the material himself.   For example, in response to posted videos, the defendant states:

> THIS VIDEO IS AWESOME IN SO MANY WAYS !!!!!

> OMG the 1st couple of minutes are priceless. I mean I enjoy pure monkey carnage as much as the next person but there is something so special about a rat on the way to becoming irreversibly mentally damaged that warms my heart!

> What makes us human is the fact we evolved past these shit eating rats! We developed art, literature, ordered societies, technology to address our condition if we choose to use it. Therefore, since we are dominant species, we have the right to use our will on these rats as we see fit. So that Karens is what makes us human.

*See* Exhibit A, Group Chat Examples.

For a person to enjoy watching the torture of these animals shows a window into a person's true characteristics, as here.   And, RADTKE even had some ideas on how to torture the "rats" for new videos:

> From: 5816250446 Simian Sam (owner)
>
> Boiling oil
>
> 4/7/2023 4:51:11 PM(UTC+0)

> From: 5816250446 Simian Sam (owner)
>
> Make its skin look like kfc chicken
>
> 4/7/2023 4:52:33 PM(UTC+0)

> Save this for later bit Crush hands feet in vice end with slowly crushing head backing pressure off and reapplying it later

> I want to see rat go into sezures

Ex. A.

      Based on his creation of the videos and his clear interest in the torture, RADTKE is deserving of 36 months' imprisonment.

      C.  Need to Deter Future Criminal Conduct, to Protect the Public, and Just Punishment

      The defendant's sentence needs to accomplish the twin goals of deterring the defendant and others from engaging in future criminal conduct and to protect the public.   Based on RADTKE's lack of criminal history, there is a good chance he will not go back to crime in the near future.   However, while his interest in monkey torture videos seems to be relatively recent, it is a deviant interest for sure.   These interests are always hard to overcome and control.

However, a significant sentence of 36 months may help deter the defendant from choosing criminal activities after prison.

A 36-month sentence would also send a strong message to the public at large that the law will not tolerate the cruelty and abuse of animals. This crime is not only cruel to living creatures, but it is generally depraved and not something our society will allow. And, because these types of cases are so rarely prosecuted, it is important to stress to society at large how serious these crimes are under the law.

Further, the Court needs to provide just punishment for the defendant's crime. While the crime is not against a person per se, it is against a living, defenseless creature. And, studies find "people who abuse animals are five times more likely to commit violent crimes against humans." Jared Squires, *The Link Between Animal Cruelty and Human Violence: Children Caught in the Middle*, 8 Ky. Child. Rts.. J. 2, 5 (2000). It is a crime that is a threat to the health and safety of our community and should be punished as such.

D. Need to Provide Treatment to Defendant

Due to the nature and duration of the defendant's crimes, he should be ordered to participate in a mental treatment program while incarcerated.

E. The Kinds of Sentences Available

The available statutory sentence for RADTKE's crimes of conviction is a maximum sentence of 5 years' incarceration, a fine of up to $250,000 fine, or both. A maximum of three years of supervised release may also be imposed. Regarding special assessments, RADTKE must be ordered to pay the $100 special assessment.

As stated, the government is asking for a sentence of imprisonment of 36 months.

F.  The Sentencing Guidelines and Need to Avoid Unwarranted Disparities

RADTKE's crime, history and characteristics, along with his actions related to the crimes of conviction, all support a severe sentence of imprisonment.   The government avers that the need to avoid unwarranted sentence disparities clearly weighs in favor of 36 months, considering his creation of the videos.   To support this request, the government will call HSI Special Agent Paul Wolpert to testify about the defendant as compared with other conspirators, including those mentioned as related cases in the Presentence Report (PSR).   18 U.S.C. § 3553(a)(6).

## IV.   SUPERVISED RELEASE CONDITIONS

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d).   In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR.   *Rogers*, 961 F.3d at 299.   Here, the U.S. Probation Office has outlined the mandatory, standard and the special conditions of supervised release on pages 17 through 20 of the PSR.

## V.  CONCLUSION

For the reasons stated above, the government asks the Court to impose the role enhancement to the defendant's Guidelines calculations and sentence him to 36 months of imprisonment, followed by three years' supervised release.

          ERIK S. SIEBERT
          UNITED STATES ATTORNEY

By:         /s/
      Elizabeth M. Yusi
      Assistant United States Attorney
      Attorney for the United States
      United States Attorney's Office
      101 West Main Street, Suite 8000
      Norfolk, VA 23510
      Office Number:   757-441-6331
      Facsimile Number: 757-441-6689
      E-Mail Address: elizabeth.yusi@usdoj.gov