EAP:nab
AO 106 (Rev. 04/10) Application for a Search Warrant

2023R00044

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF THE
RESIDENCE DESCRIBED IN ATTACHMENT A

**SEALED BY ORDER OF THE COURT**

Case No. 23-mj-333 (DJF)

## APPLICATION FOR A SEARCH WARRANT

I, Paul G. Wolpert, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the State and District of Minnesota, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

| | |
|---|---|
| X | evidence of a crime; |
| X | contraband, fruits of crime, or other items illegally possessed; |
| X | property designed for use, intended for use, or used in committing a crime; |
| | a person to be arrested or a person who is unlawfully restrained. |

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 48 | Preventing Animal Cruelty and Torture Act |
| Title 18, United States Code, Section 371 | Conspiracy |
| Title 18, United States Code, Section 1462 | Prohibiting the Importation or Transportation of Obscene Matters |

The application is based on these facts:

**See Affidavit, incorporated here**

| | |
|---|---|
| X | Continued on the attached sheet. |

_____
*Applicant's Signature*

Paul Wolpert, Special Agent
Department of Homeland Security
Homeland Security Investigations
Norfolk, VA
*Printed Name and Title*

SUBSCRIBED and SWORN before me by reliable
electronic means (Zoom and email)
pursuant to Fed. R. Crim. P. 41(d)(3)

Date: April 20, 2023

City and State: Minneapolis, MN

_____
*Judge's Signature*

The Honorable Dulce J. Foster
United States Magistrate Judge
*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A RESIDENCE FURTHER DESCRIBED IN ATTACHMENT A | **FILED UNDER SEAL**<br><br>**Criminal No. 23-mj-333 (DJF)** |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR TARGET RESIDENCE**

I, Paul G. Wolpert, being first duly sworn state as follows:

**INTRODUCTION**

1.      I am a Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), currently assigned to the Office of Professional Responsibility. Prior to my current assignment  I was assigned to the Office of the Assistant Special Agent in Charge (ASAC), Norfolk, Virginia.  I have been so employed since April 2002.  As part of my daily duties as an HSI agent, I investigate criminal violations relating to the online exploitation of children as well as other violations involving the use of the Internet.  I make this application for a search warrant for the location at **2400 West 102nd Street, Apartment 141, Bloomington, MN, 55431** ("the TARGET LOCATION").

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

**LOCATION**

3.      The statements in this affidavit are based in part on my investigation of this matter and on information provided by other law enforcement agents.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 48, is located within **2400 West 102nd Street, Apartment 141, Bloomington, MN, 55431**.

1

## LEGAL AUTHORITY

### A.    Pertinent Criminal Statutes

4.    Title 18, United States Code § 48(a)(2), which makes it unlawful for any person to knowingly create an animal crush video if –

        a.    the person intends or has reason to know that the animal crush video will be distributed in or using a means or facility of, interstate or foreign commerce.

5.    Title 18, United States Code § 48(a)(3), which makes it unlawful for any person to knowingly sell, market, advertise, exchange, or distribute an animal crush video in, or using a means or facility of, interstate or foreign commerce.

6.    Title 18, United States Code § 48(b), which makes the provisions of § 48 applicable to the knowing sale, marketing, advertising, exchange, distribution, or creation of an animal crush video outside of the United States, if-

        a.    the person engaging in such conduct intends or has reason to know that the animal crush video will be transported into the United States or its territories or possessions; or

        b.    the animal crush video is transported into the United States or its territories or possessions.

7.    Title 18, United States Code §§ 48(f)(1)-(2), which define "animal crush video" as any photograph, motion-picture film, video or digital recording, or electronic image that-

        a.    Depicts actual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is intentionally crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury; and

        b.    is obscene.

8.    Title 18, United States Code § 371, makes it a crime for two or more persons conspire to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy.

9.    Title 18, United States Code § 1462(a), which makes it unlawful to bring into the United States, or any place subject to the jurisdiction thereof, or knowingly use any express company, other common carrier, or interactive computer service for carriage in interstate or foreign

commerce, any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print or other matter of indecent character.

## OBSCENITY

10.     The test to determine which materials are "obscene," and therefore outside the protection of the First Amendment, was set forth in *Miller v. California*, 413 U.S. 15 (1973).  To be obscene under Miller, the government must establish that the material taken as a whole appeals to prurient interests, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. *See Miller*, 413 U.S. at 24.

11.     With respect to the "prurient interests" reflected in animal crush videos, Dr. Kevin Volkan, then Chair and Professor of Psychology at California State University Channel Islands, explained in 2010 in written testimony to the Senate Judiciary Committee that "crush" paraphilias and "crush videos are sexual in nature and that those who watch crush videos do so to obtain sexual gratification."

12.     The fact that the activities displayed in "crush" videos are criminalized under the laws of all fifty states is strong evidence that the activity depicted in such videos is "patently offensive in light of contemporary community standards." This conclusion is also supported by the fact that forty-six of the fifty states ban sexual contact with animals.

13.     Additionally, the laws criminalizing the activities depicted in crush videos speak to the lack of "serious literary, artistic, political, or scientific value" in such videos.

## DEFINITIONS

14.     "Cloud-based storage service," as used herein, refers to a publicly accessible, online storage provider that users can use to store and trade files in larger volumes. Users of such a service can share links and associated passwords to their stored files with others in order to grant access to their collections.  Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time.  An individual with the password to a file stored on a cloud-based service does not need to be a user of the service to access the file.  Access is free and readily available to anyone who has an Internet connection.

15.     "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

16.     "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices

3

(including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

17.    "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

18.    "Computer server" or "server," as used herein, is a computer that is attached to a dedicated network and serves many users. A web server, for example, is a computer which hosts the data associated with a website. That web server receives requests from a user and delivers information from the server to the user's computer via the Internet.

19.    Electronic storage" means (a) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication. 18 U.S.C. § 2510(17).

20.    "File Transfer Protocol" ("FTP"), as used herein, is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the Internet. FTP is built on client-server architecture and uses separate control and data connections between the client and the server.

21.    The "Internet," as used herein, is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.    "Internet Protocol Address" (IP Address), as used herein, refers to refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

4

23.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

24.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

25.     "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

26.     The term "Universal Resource Locator" (URL): A URL is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies the specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

27.     "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

28.     "Website," as used herein, consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS AND RELATED MEDIA

29.     Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud-based" service storage. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension "jpg" often are image files; however, a user can easily change the extension to "txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

30. Based on my own experience and my consultation with other agents who have been involved in computer searches, searching computerized information for contraband, evidence, fruits, or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral devices, related software, documentation, and data security devices (including passwords), so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons that

6

compel this conclusion:

    e.  The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices; and

    f.  In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU). Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software that may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

31.    Additionally, based upon my training and experience and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called "wireless routers," which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be "secured" (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or "unsecured" (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

## PROBABLE CAUSE TO SEARCH

32.    In June 2022, Homeland Security Investigations (HSI), Norfolk, received information from HSI Boston, that identified an individual that may have been residing in Chesapeake Virginia who had organized and was leading a Telegram[1] group that was dedicated to

---

1 Telegram is an instant messaging service, which also provides video calling, voice over Internet Protocol (VoIP), file sharing, and other features. Chats, including group chats, are end-to-end encrypted.

the abuse, torture, and destruction of various aged monkey's. The chat communications included discussion of the types of torture the members wished to see happen to the monkey's, as well as the methods of providing "donations" to help pay individuals in Indonesia to make the videos. Included in the information was a screen shot of the leader's user profile with the identity of "Torture King Jr.".

33.     Further investigation of "Torture King" revealed the identity of the account user as Michael Macartney and his location in Chesapeake, VA. Additional administrative summon's were issued for Macartney's online payment accounts to include PayPal, Venmo, and Cashapp.

34.     A review of the transactions for the accounts revealed over 60 additional accounts of individuals around the world that appeared to have paid money to Macartney to purchase videos as well as to pay for the creation of additional monkey torture videos. Included in the comments section of some of the transactions were comments such as "Harsh discipline", "For monkey vid Chris", and "Videos a lot of them". On average, the donations ranged between $5 - $100.

35.     On or about July 6, 2022, your affiant received captured chats from Macartney's Telegram chat group "Harley Davidson Fan Club". The name of the group had been changed from "Hangin with the King", and "Monkey Business". Throughout the chats, Macartney was known as "Torture King Jr.", "DA KING TK", or "TK". A review revealed Macartney discussing his group creation, and the manufacturing and sale of his videos, as well as his trips to Florida to hunt macaque monkeys. A few examples of the chats include:

### April 3, 2022

**Unidentified** – Anyone catch any babies in Orlando Florida ever?
**Torture king Jr.** – Me
**Torture King Jr.** – I go to Gainesville Florida every mid April
**Unidentified** – Will I have any luck finding one in Orlando?
**Torture King Jr.** – This will be my 4th year going
**Torture King Jr.** – Gainesville and Silver springs area are your best bet
.....
**Torture King Jr.** – I catch about 4-5 adults, an about 2-4 juvenile an couple baby's every year so far
.....
**Unidentified** – I don't want the adults lol just babies. Got any tips where I should look or best way to snatch a baby?
**Torture King Jr.** – Private chat me

### Direct messaging chat with 757-578-6117

**Unidentified** – You doing a monkey hunt soon?
**Torture King Jr.** – Leaving next Thursday for Gainesville Florida bro
**Torture King Jr.** – Can't wait

**Torture King Jr.** – Your in the states, you should meet up with me n my bro, it's an awesome 4 days
**Unidentified** – I would love to believe me, but I got school and shit
.....
**Torture King Jr**. – It's just me n my bro who go every year. We are both here in Virginia Beach
**Unidentified** – Of shit you aren't that far from me actually
**Torture King Jr.** – Where u at? It stays between us, obviously
**Torture King Jr.** – I'm in Chesapeake VA

**April 2022**

**Torture King Jr.** – Your welcome bro and actually I'll it for $75 if you decide too.
**Unidentified** – how do you accept payment
**Torture King Jr.** – Venmo cashapp or PayPal
**Torture King Jr.** – I'm actually at around 2300
**Torture King Jr.** – Just counted
**Torture King Jr.** – If PayPal gotta do as friends and family not goods and services otherwise they hold the money for 21 days…it's retarded
**Unidentified** – hmm ok
**Unidentified** – cashapp?
**Torture King Jr.** – And I'll transfer everything within one minute of funds received
**Unidentified** – gotcha
**Torture King Jr.** – It's just good business
**Torture King Jr.** - $MichaelMacartney

**April 13, 2022**

**Torture King Jr.** – (posted two links to a Google Drive, which when accessed, contained videos depicting the torture of monkeys available to be downloaded.)

**April 17, 2022** – (while discussing the creation of his online group);

**Torture King Jr.** – I got no fucking secrets and I don't fucking care who knows me. My name is Mike Macartney…I live in Chesapeake Virginia

**June 22, 2022**

**DA KING TK** - OK FAMILY.. SADISTIC & MYSELF JUST TALKED. FROM THIS POINT FORWARD SINCE HER VO IS AMAZING, DECIDED TO OFFICIALLY WORK TOGETHER. WHEN SHES READY TO GET WITH HER VO OUR GROUP WILL RAISE DONATIONS TO HELP TOWARDS THE NEW VIDEO & SHE WILL TAKE IDEAS WE MAY HAVE ALSO. I FEEL

9

THIS WILL BE GREAT CUZ HER VO ALWAYS DELIVERS IN A VERY TIMELY MANNER AND HER GROUP WILL CONTRIBUTE DONATIONS AS WELL. IT WILL BE THE SAME AS ITS ALWAYS BEEN...ALL DONATIONS FROM OUR GROUP COME TO ME SO I CAN ACCOUNT FOR OUR CONTRIBUTIONS AND ILL FORWARD TO HER WHEN SHES READY FOR IT. THIS WILL GUARANTEE US NEW CONTENT ON A REGULAR BASIS THAT WONT BREAK OUR POCKETS.

36.    Included in the captured chats were videos provided to the participants. An example of the videos are:

**"hammered limbs full compressed"** – which is a 12:48 video. The video depicts a small monkey and an individual with a hammer. The individual crushes the limbs of the monkey with the hammer and then eventually it's head with a vice until it's dead.

**"Fire01_3_Final_Burn"** – which is a 3:21 videos. The video depicts a young monkey laying on the ground with its arms spread and tied to stakes in the ground and appears to be in pain. An individual pours a liquid on the monkey and then lights it on fire.

37.    On August 5, 2022, your affiant executed a Federal search warrant at the residence of Michael Macartney, for evidence of violations of 18 USC 48. During the search, Macartney agreed to an interview. Macartney provided information about his activities related to the monkey torture, and information about others he had interacted with that had created their own Telegram groups dedicated to monkey torture. Two of the individuals Macartney identified were "Mr. Ape" and "Sadistic Queen". Macartney also granted consent for law enforcement to assume access to his online accounts related to the monkey torture activity.

38.    As part of the investigation, your affiant accessed Macartney's online accounts and reviewed his communications. Your affiant has also received chat logs from other sources, to include communications between Macartney, "Mr. Ape" (aka Chaotic Ape), and "Sadistic Queen" (aka Sadistic Mindfuck). A review of the chat logs revealed various payment request methods between them. As a result, "Mr. Ape" and "Sadistic Queen" were positively identified as Drexel Venero, and Stacey Storey respectively.

39.    The following are examples of the communications between Venero and Storey:

**April 7, 2022**

**Chaotic Ape**
Seriously I'm so tired of all the division
Would your guy put a monkey in a blender for me?
**SadisticMindFuck**

10

I can ask but I think the only way that would work would be a newbie. I don't think it would work with a bigger one

**Chaotic Ape**

Yeah that's fine

**SadisticMindFuck**

When you mean seeing one in a blender. You mean seeing it chopped up or what?

**Chaotic Ape**

Yeah chopped up

But pausing while it's still alive over and over until dead

So basically:

1) turn on very briefly

2) shut off quickly

3) 5 seconds of pause and close up

4) repeat until monkey smoothie

5) shit and giggles put it in a bottle and feed other rat. Or at least try to lmao

It'll that's too complicated to translate just simplify

This my monyet 😁?

------

**SadisticMindFuck**

He said he will do it. They sell large size blenders there

**SadisticMindFuck**

I got your price for rat

**Chaotic Ape**

Ok hit me

**SadisticMindFuck**

200 for my guy and 50 for the big blender that will be required for it to work

**Chaotic Ape**

Understood give me some time, is a couple days ok? I know it might be a different monkey but it's not like rats are in short supply lmao. How is Ji btw?


**April 13, 2022**


**SadisticMindFuck**

Send me the instructions first so I can send them to him so that he knows what to do and I get a yes or no from him before we send money

**Chaotic Ape**

Ok

1) no clothes

2) turn blender on

3) lower monkey in slowly

4) monkey gets cut up for a second or two

5) pull monkey out

6) turn blender off

7) film expressions, wounds and noises

11

8) repeat 2 through 7 until monkey dead
9) blend until liquid monkey
Kinda make sense?
Tail first btw
**SadisticMindFuck**
You have just cashapp right
**Chaotic Ape**
Cashapp, crypto
**SadisticMindFuck**
Ok send cashapp to me and I'll have to send to him. I'll send SS of payment when sent
**Chaotic Ape**
What's your cashapp?
Mine is $MisterViciousApe
**SadisticMindFuck**
(provides screenshot of Cashapp account)

**Chaotic Ape**
Gotcha
Okay give me a few
**SadisticMindFuck**
Ok
Chaotic Ape
Done
**SadisticMindFuck**
(provides screenshot of PayPal payment, name is blacked out)

**April 17, 2022**

**SadisticMindFuck**
(Sends 12 video clips depicting the requested monkey torture)
I'm sending this to you. I fell asleep.
I'm not pleased at all with it. There's just a lack of communication and understanding of what we're asking for and idk how to fix that
**SadisticMindFuck**
I went ahead and shared because people had already waited so long but so far altho it's not what was asked. People seem very pleased and understanding of the language barrier. I'm going to be involved with him from now on with the unusual request so that we can get it right. He was also worried about People thinking he was scamming so I do understand where he's coming from
**Chaotic Ape**
I don't understand, why is he trying to drown it?
**Chaotic Ape**
Can the video be redone?

12

**SadisticMindFuck**

It was a language issue. I explained that in the group. He msged me about your number 9 request and said he wasn't sure he could get it done. I'm thinking the rat is already mush but couldn't get the soup style rat you wanted so i suggested water and that's where the water came in. I guess he thought I meant take it to the river.

**Chaotic Ape**

yeah i get it

makes sense

is he big into pleasing his buyers or is he gonna ask for more money to redo it?

**SadisticMindFuck**

He's never been asked to redo a video. Language barrier is the main problem when it comes to doing these videos. They may see a request as "this way" but what we meant was "that way" if you get what I'm saying. Just like the water I suggested. He took it differently than what I meant. I don't think we should punish any VO as long as we have this language issue. My last video wasn't done correctly either but here we go back to the this way and that way thing. I'm going to see if I can order or it could be online their language book. Instead of using Google translate which I hear sucks. Why not just use their language to communicate. I think that's the best way to go about all this and to get the results that are wanted

**Chaotic Ape**

its not that its a bad video, pretty good actually, i just think if he kept trying the thing could have actually been blended to death

i mean we have the blender now so there is that. all that really has to be done is get another monkey

**SadisticMindFuck**

That blender is retired unfortunately lol the rat killed it. It just wasn't big enough. We talked a while this morning and I told him that on the more unusual request that I needed to be involved. Like when he went to purchase the blender. He could have video called me and I could have helped in the purchase. I would have told him that the one he was picking out wasn't going to work. So that's something that I'll be doing from now on. I do understand our language so if I'm more involved in the making of these vids then we prob could get them right

**Chaotic Ape**

Got it.

**April 23, 2022**

**Sadistic Mind**

Since it seems some of the list has changed by ppls request. Give me what you want done again

**Chaotic Ape**

If possible

1) Hammer arms, hands, fingers, legs feet, toes on a hard surface like concrete until flat as possible Smash the balls and dick of monkey with hammer

13

2) pull teeth
3) rubbing alcohol sprayed into mouth
4)cut off eyelids
5) c clamp to head tightened slowly until dead

## April 24, 2022

**Sadistic Mind**
…My man is ready whenever you are but let me know how it goes with CV if you don't do it in group chat
**Chaotic Ape**
Will do
175?
Cashapp?
**Sadistic Mind**
Yeah
I'll send receipt once I send it to him
**Chaotic Ape**
One min
Done
May take some time to go through cash app has been slow lately
Tax season
**Sadistic Mind**
Let me send it to him
**Chaotic Ape**
Cool
**Sadistic Mind**
(Screenshot of PayPal transaction, payment to "jeff ra", in which last name appeared to be cut off)
**Chaotic Ape**
Awesome


## April 25, 2022

**Sadistic Mind**
(posted 8 video clips depicting the requested torture)
It's in short vids again but that one is on me bc I forgot to tell him but we need to discuss a few more things about these vids with the group. I think some more things need to be added with what we want when we request vids. For example time spent on making them. We pay too much for 10 mins. You know what I'm saying?
You could get that guy that knows how to edit them, put this one all together before you post it.

14

**Chaotic Ape**
DAMN!
That thing got fucked

40.     On or about July 21, 2022, your affiant issued an administrative summons to Block Inc., for any CashApp accounts belonging to Stacey Storey. On or about September 6, 2022, Block inc., responded to the summons with the CashApp account information for Stacey Storey. A review of transaction information revealed Storey received money from user "Mister Ape" on 4/13/2022 8:43:42PM PST, in the amount of $250.00, and on 4/24/2022 4:35:20PM PST, in the amount of $175.00.

41.     On or about March 13, 2023, an HSI Norfolk S/A issued an administrative summons to PayPal for any accounts belonging to Stacey Storey. On or about March 16, 2023, PayPal responded to the summons with account information for Stacey Storey. A review of transaction information revealed Storey sent money to an account owned by Jeff Radtke, on 4/13/2022 8:47:12PM PST, for $250.00, and on 4/24/2022 4:39:18PM PST, for $175.00. The records also reflected thirteen total similar payments from Storey to Radtke between March – July 2022.

42.     On or about March 17, 2023, an HSI Norfolk S/A issued an administrative summons to PayPal for any accounts belonging to Jeffery Radtke. On or about March 21, 2023, PayPal responded to the summons with account information for Jeff Radtke, 2400 102nd St. West 141, Bloomington, MN, US 55431. A review of transaction information revealed Radtke received the money from Storey, and then immediately sent the money to an account owned by Ny Noviyanto, on 4/14/2022 10:04:41AM PST, for $250.00, and on 4/24/2022 6:28:08PM PST, for $175.00.

43.     On or about March 23, 2023, an HSI Norfolk S/A issued an administrative summons to PayPal for any accounts belonging to Ny Noviyanto. On or about March 24, 2023, PayPal responded to the summons with account information for Ny Noviyanto. A review of transaction information revealed Ny Noviyanto, with a listed address of Kauman Rt. 01/04 Jatingarang, Sukoharjo, JAWA Tengah, Indonesia, 57562, received money from Jeffery Radtke over 43 separate transactions between January – August 2022.

44.     Special Agents with the Fish and Wildlife Service (FWS) have conducted surveillance of the target address and observed it is a multi-unit apartment building. The target address is a residence contained within the Pennbrooke Apartments. The target residence is a first floor apartment, has a brown door with the number "141" in white numbers printed on a black background.

45.     On or about April 12, 2023, FWS S/A Brandenburg contacted the United States Postal Service (USPS) to verify the recipients of mail at the target residence. Later the same day, a USPS Inspector responded that the current recipient of mail listed for the residence was Jeff Radtke.

15

46.    On or about April 14 2023, FWS S/A Brandenburg received information from the Minnesota DMV for the driver's license for Jeffrey Radtke listing the address as the target residence. The driver's license expired on 11/05/2022.

## BIOMETRIC ACCESS TO DEVICES

47.    I ask that the search warrant, to the extent it authorizes the seizure and search of the electronic devices, authorize the use of the biometric unlock features on any such devices, based on the following, which I know from my training, experience, and review of publicly available materials.

48.    Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

49.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

50.    Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress the user's thumb-and/or fingers on the device(s); and (2) hold the device(s)in front of the user's face with his/her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

## CONCLUSION

51.    Based upon the facts set forth above, I submit that probable cause exists to believe located at the TARGET LOCATION is evidence of 18 U.S.C. § 48, which makes it unlawful for any person to knowingly create an animal crush video if, the person intends or has reason to know that the animal crush video will be distributed in or using a means or facility of, interstate or foreign commerce; which makes it unlawful for any person to knowingly sell, market, advertise, exchange, or distribute an animal crush video in, or using a means or facility of, interstate or foreign commerce; and which makes the provisions of § 48 applicable to the knowing sale, marketing, advertising, exchange, distribution, or creation of an animal crush video outside of the United States, if, the person engaging in such conduct intends or has reason to know that the animal crush video will be transported into the United States or its territories or

possessions; or the animal crush video is transported into the United States or its territories or possessions.

52.     I further submit that probable cause exists to believe that evidence, fruits, and instrumentalities of such violations will be found within the TARGET LOCATION.

53.     Accordingly, I respectfully request the issuance of warrant authorizing the search of **2400 West 102nd Street, Apartment 141, Bloomington, MN, 55431**, described in Attachment A, for the items specified in Attachment B.

FURTHER AFFIANT SAYETH NOT.

_____
Special Agent Paul Wolpert
Department of Homeland Security
Homeland Security Investigations
Norfolk, VA

SUBSCRIBED and SWORN before
me by reliable electronic means
(Zoom and Email) pursuant to
Fed. R. Crim. P. 41(d)(3)
on this  20ᵗʰ  of April 2023.

_____
THE HONORABLE DULCE J. FOSTER
UNITED STATES MAGISTRATE JUDGE

17

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to the residence located at **2400 West 102nd Street, Apartment 141, Bloomington, MN, 55431**. The target location is further described as a multi-unit apartment building. The target address is a residence contained within the Pennbrooke Apartments. The target residence is a first floor apartment, has a brown door with the number "141" in white numbers printed on a black background. The target residence has a sliding back door that leads out to a small patio.







19



20

**ATTACHMENT B**

**Particular Things to be Seized**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. § 48 and 18 U.S.C. § 1462:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   h. evidence of the times the COMPUTER was used;

   i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

   j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

   k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Animal crush videos, as defined by 18 U.S.C. § 48(a).

5. Obscene materials as defined by the United States Supreme Court in *Miller v. California* and subsequent cases discussing the definition of obscenity.

6. Records, information, and items relating to violations of the statutes described above including;

  a. Records, information, and items relating to the occupancy or ownership of, **2400 West 102nd Street, Apartment 141, Bloomington, MN, 55431,** including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

  b. Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

  c. Records and information relating to creating, selling, marketing, advertising, exchanging or distributing animal crush videos and/or obscene materials, including correspondence and communications between others engaged in the same.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the execution of this search warrant, law enforcement is permitted to: (1) depress Jeffrey Radtke's thumb and/or fingers onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of Jeffrey Radtke's face with *his* eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device. In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in *Graham v. Connor,* 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

Further, law enforcement may compel the use of the biometric features described above if: (1) the procedure is carried out with dispatch and in the immediate vicinity of the premises to be searched, and if, at the time of compulsion, the government has (2) reasonable suspicion that the suspect has committed a criminal act that is the subject matter of the warrant; and (3) reasonable suspicion that the individual's biometric features will unlock the device, that is, for example, because there is a reasonable suspicion to believe that the individual is the user of the device.

SEARCH WARRANT ADDENDUM

1.    In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.    If electronically stored data, information, documents or other records have been identified and seized by the government pursuant to this warrant, the government may retain the electronic storage device (e.g., computer, hard drive, mobile device, smartphone, cell phone). The person from whom the electronic storage device was seized may request that the government provide him or her with electronic copies of the data, information, documents or other records by making a written request to the United States Attorney's Office, identifying with specificity the data, information, documents or other records sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data, information, documents or other records requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3.    Nothing in this warrant shall limit or prevent the government from seizing the electronic storage device as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the electronic storage device and the data contained in the device. Nothing in this warrant shall limit or prevent the owner of the electronic storage device, files, software, hardware, data, information, documents or other records from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property, or (b) making a request of the government to return certain specified electronic storage devices, files, software, hardware, data, information, documents or other records.

4.    The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that data seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up an ethical wall between the evidence and the prosecution team that will prevent any privileged material from getting through to the prosecution team.

EAP:nab
AO 93 (Rev. 12/09) Search and Seizure Warrant

2023R00044

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF THE
RESIDENCE DESCRIBED IN ATTACHMENT A

**SEALED BY ORDER OF THE COURT**

Case No. 23-mj-333 (DJF)

## SEARCH AND SEIZURE WARRANT

To:        Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

**See Attachment A, incorporated here.**

The person or property to be searched, described above, is believed to conceal:

**See Attachment B, incorporated here.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before        May 3, 2023
                                                                                                        _(not to exceed 14 days)_

 X      in the daytime 6:00 a.m. to 10 p.m.                _ at any time in the day or night as I find reasonable
        cause has been established.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the current United States Magistrate Judge on duty.

Date and Time issued: ___April 20, 2023___
                                              12:05 P.M.
City and State: __Minneapolis, MN__

_Judge's Signature_

The Honorable Dulce J. Foster
United States Magistrate Judge
_Printed Name and Title_

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  _____

_____
*Executing officer's signature*

_____
*Printed Name and Title*

SUBSCRIBED and SWORN before me by reliable
electronic means (Zoom and email)
pursuant to Fed. R. Crim. P. 41(d)(3)

_____          _____
United States Magistrate Judge              Date

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 23-mj-333 (DJF)

IN THE MATTER OF THE SEARCH OF
THE RESIDENCE DESCRIBED IN
ATTACHMENT A

**SEALED BY ORDER OF THE COURT**
PETITION OF THE UNITED
STATES FOR AN ORDER
SEALING SEARCH WARRANT,
AFFIDAVIT, RETURN, PETITION
AND ORDER
FOR SEALING

COMES NOW the United States of America by its undersigned attorneys and in support of its Petition for an Order Sealing Search Warrant, Affidavit, Return, and Petition in the above-captioned matter, states as follows:

1.     On April 19, 2023, The Honorable Dulce J. Foster issued a warrant authorizing the search of 2400 West 102nd Street, Apartment 141, Bloomington, MN, 55431.

2.     The Affidavit of Special Agent, Paul G. Wolpert submitted in support of the search warrant, sets forth facts regarding an ongoing investigation into violations of Title 18, United States Code, Section 48, Preventing Animal Cruelty and Torture Act; Title 18, United States Code, Section 371, Conspiracy; and Title 18, United States Code, Section 1462, Prohibiting the Importation or Transportation of Obscene Matters.

3.     The search warrant documents presented to this Court for *in camera* review include detailed and highly sensitive investigative information.  Disclosure of the information would jeopardize an ongoing investigation into alleged criminal offenses and the privacy of individuals unlikely to be, and/or who may ultimately not be indicted.

4.      Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised. Immediate public filing of the search warrant documents would, *inter alia*, compromise details about the nature, extent, and scope of the investigation.

5.      The search warrant documents contain identifying information of and circumstances relating to an individual involved in criminal activity in some way who may not be indicted in this case. Nondisclosure of the search warrant documents at this stage is necessary to protect the person's identity and/or to minimize the substantial risk that revelation of details set forth in the search warrant documents could cause to the person's reputation.

6.      The Court's power to prevent disclosure of its files, especially for a limited period of time, is well established. This general power has been recognized by the United States Supreme Court.

> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over some records and files and access has been denied where court files might have become a vehicle for improper purposes.

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

7.      The Eighth Circuit has recognized the Court's specific power to restrict access to search warrant documents like those at issue here:

> We hold that the qualified first amendment right of public access extends to the documents filed in support of search warrants and that the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable.

2

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).

8.     The Eighth Circuit and district courts within the Circuit have recognized that the circumstances surrounding ongoing investigations constitute compelling government interests warranting the sealing of search warrant documents. For example, the Eighth Circuit has approved sealing search warrant documents that "describe[d] in detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," resulting in "substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *Gunn* at 574. Other compelling interests have similarly been recognized as justifying sealing. *Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corporation v. Pulitzer Publishing Co.*, 895 F.2d 460, 466 (8th Cir. 1990) ("[w]here no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that whatever their truth, the Government cannot prove these allegations. . . .All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.").

9.     Moreover, the Eighth Circuit has recognized that search warrant affidavits permeated with references to individuals other than the subjects of the search warrant and/or with information revealing the nature, scope and direction of the government's ongoing investigation may be sealed not only because they present compelling government interests justifying sealing, but also because less restrictive alternatives to sealing are in such circumstances impracticable. *Gunn*, 855 F.2d at 574.

3

10.     Based upon the foregoing and all the files and proceedings to date, the United States respectfully requests that this Court issue an Order Sealing the Warrant, Application, Affidavit of Special Agent, Paul G. Wolpert, Return, this Petition, and the Sealing Order until the close of business on April 19, 2024, unless a compelling interest is shown by the United States for a continuation of the sealing.

Dated:  April 19, 2023                    Respectfully submitted,

                                          ANDREW M. LUGER
                                          United States Attorney

                                          *s/ Emily A. Polachek*

                                    BY:   Emily A. Polachek
                                          Assistant U.S. Attorney

4

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 23-mj-333 (DJF)

IN THE MATTER OF THE SEARCH OF
THE RESIDENCE DESCRIBED IN
ATTACHMENT A

**SEALED BY ORDER OF THE
COURT**

ORDER FOR SEALING

This Court, having reviewed the Petition of the United States herein, finds that the
United States has shown a compelling interest in the sealing of documents in the above-
captioned matter because:

    a.    Nondisclosure of the search warrant documents is necessary to prevent the
ongoing investigation from being compromised.

    b.    Nondisclosure of the search warrant documents is necessary to protect the
privacy of an individual who may ultimately remain unindicted.

This Court also finds that less restrictive alternatives to sealing are impracticable or
not appropriate.

It is therefore:

ORDERED that all documents filed in the above-captioned matter are hereby sealed
until the close of business on April 19, 2024.

IT IS FURTHER ORDERED that these documents will be unsealed at the above time unless further compelling interest is shown by the United States for continuing this Order for an additional period of time.

April 20, 2023
Date

The Honorable Dulce J. Foster
United States Magistrate Judge